UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LISA MENDILLO              :
                           :
                           :
v.                         :    CIV. NO. 3:12CV1383 (WWE)
                           :
THE PRUDENTIAL INSURANCE   :
COMPANY OF AMERICA         :

<u>RULING ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [DOC. #41] AND
ATTORNEY BEEBE'S MOTION TO QUASH [DOC. #42]</u>

Plaintiff Lisa Mendillo moves for a protective order precluding defendant The Prudential Insurance Company of America from taking the deposition of plaintiff's personal injury attorney, Michael Beebe. [Doc. #41].  Attorney Beebe, through plaintiff's counsel, also moves to quash the subpoena <u>duces tecum</u> served by defendant. [Doc. #42].  Defendant opposes both motions. [Doc. #45].  For the reasons that follow, plaintiff's motion for protective order [Doc. #41] and Attorney Beebe's motion to quash [Doc. #42] are GRANTED IN PART AND DENIED IN PART.

**1.  Background**

Plaintiff brings this employment discrimination action pursuant to the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act ("FMLA"), and the Connecticut Fair Employment Practices Act. [Amended Compl., Doc. #23].  Plaintiff alleges that she is now fifty one (51) years old, and was employed by defendant or its predecessor for over fifteen (15) years.  Plaintiff alleges that she suffered serious injuries from a car accident in May 2010,

1

and as a result took intermittent FMLA leave from her employment
at defendant's "call center".  Prior to the car accident,
plaintiff alleges that she received excellent reviews and
performance ratings.  Following plaintiff's FMLA leave,
plaintiff alleges, inter alia, that defendant placed her on a
"Performance Building Plan", that she received the lowest
performance rating of her career, and was ultimately terminated
with her responsibilities delegated to the remaining, younger,
representatives. Plaintiff alleges past and future economic harm
and seeks statutory damages for lost wages pursuant to 29 U.S.C.
§2617(a)(1)(A), and compensatory damages. [Amended Compl., Doc.
#23].

In connection with plaintiff's car accident, she hired
personal injury attorney Michael Beebe to seek compensation from
the individual who caused her automobile accident, Patricia L.
Headly. [Doc. #41-2, at 2].[1]  As part of discovery in this
matter, plaintiff produced a letter from Attorney Beebe to State
Farm Insurance Company, outlining plaintiff's damages and
demanding the policy limits on Ms. Headly's automobile insurance
policy ("State Farm letter"). [Doc. #41-3].  The damages claimed
in the State Farm letter include both past and future lost
wages. [Id.].  Pertinent to the pending issues, the letter
further asserts that

> Lisa was separated from service from Prudential on August
> 18, 2011, and it is our claim that her injuries
> substantially and materially contributed to the loss of her
> career with Prudential.  The injuries caused by the
> collision with your insured, caused pain and dysfunction

---

[1] Plaintiff filed suit in Connecticut Superior Court seeking damages for the
automobile accident. [Doc. #45, at 4].

> that affected the quantity and quality of her work at
> Prudential.  As such, Lisa makes a claim for both past and
> future lost wages as she has been unable to secure
> employment after being discharged by Prudential.

[Doc. #41-3].  At plaintiff's deposition in this matter,
defendant's counsel questioned plaintiff about the State Farm
letter, including communications with Attorney Beebe concerning
the letter and claims for future lost wages. Defendant claims
that plaintiff waived the attorney-client privilege by virtue of
her testimony regarding her communications with Attorney Beebe
about her claim for future damages, and Attorney Beebe's
assurances that he would not pursue such damages.

Defendant served Attorney Beebe with a subpoena dated
October 29, 2013. [Doc. #41-3].  The subpoena seeks Attorney
Beebe's testimony and production of the following documents:

>  i.    All communications between you and Lisa Mendillo regarding
>        her claims in this action against The Prudential Insurance
>        Company of America.
>
>  ii.   All communications between you and Lisa Mendillo regarding
>        Ms. Mendillo's claim for damages as described in the May 8,
>        2012 letter from you to State Farm Insurance Companies, and
>        any subsequent changes to Ms. Mendillo's claim for damages,
>        including, but not limited to, her claim for lost wages[…].
>
>  iii.  All communications made by you to third parties on behalf
>        of Lisa Mendillo with regard to her claims against State
>        Farm Insurance Companies or Patricia Headley.
>
>  iv.   If any documents are withheld on the basis of attorney
>        client privilege or attorney work product, please provide a
>        privilege log.

[Doc. #41-3, Schedule A].[2] Defendant contends in its opposition
papers that the "bulk" of information requested by the subpoena
involves: (1) Attorney Beebe's communications with third
parties; (2) Attorney Beebe's communications with plaintiff

---

[2] Schedule A to the subpoena further states, "Please note that Ms. Mendillo
waived the attorney client privilege with regard to the above-referenced
matters during her deposition on July 12, 2013[…]"[Doc. #41-3, Schedule A].

regarding her employment claim against defendant; and (3) plaintiff's claimed damages in the personal injury litigation.

**2.   Legal Standard**

   *a. Protective Orders and Motions to Quash, Generally*

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

Notwithstanding the breadth of the discovery rules, the district courts are afforded discretion under Rule 26(c) to issue protective orders limiting the scope of discovery. <u>Dove v. Atlantic Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992) ("[t]he grant and nature of protection is singularly within the discretion of the district court...."). When the party seeking the protective order demonstrates good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." <u>Chamberlain v. Farmington Sav. Bank</u>, 247 F.R.D. 288, 289 (D. Conn. Nov. 30, 2007) (citing <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975)).

"Pursuant to Rule 45, any party may serve a subpoena commanding a nonparty 'to attend and testify' or to 'produce

4

designated documents.'" <u>Weinstein v. University of Connecticut</u>, Civ. No. 3:11CV1906(WWE), 2012 WL 3443340, at *2 (D. Conn. Aug. 15, 2012) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). Rule 45 subpoenas are subject to the relevance requirements set forth in Rule 26(b). <u>See</u> Fed. R. Civ. P. 45 Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"). Upon timely motion, a Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).

### b. Attorney-Client Privilege

The arguments presented warrant a brief overview of the law applicable to the attorney-client privilege in this Circuit. The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. <u>United States v. Constr. Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976); see <u>In re Grand Jury Investigation</u>, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000); <u>United States v. Int'l Bd. of Teamsters, Chauffeurs, Warehousemen and Helpers of</u>

<u>Am., AFL-CIO</u>, 119 F.3d 210, 214 (2d Cir. 1997).  The Court uses a three-pronged standard for determining the legitimacy of an attorney-client privilege claim.  A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. <u>In re County of Erie</u>, 473 F.3d 413, 419 (2d Cir. 2007); <u>Constr. Prods. Research, Inc.</u>, 73 F.3d at 473.

**3.   Discussion**

Plaintiff seeks a protective order on the basis that defendant's subpoena seeks to delve into protected communications between plaintiff and Attorney Beebe.[3]  Defendant argues that the pending motions should be denied because the information sought by the Beebe subpoena is relevant to the claims in this case, defendant seeks Attorney Beebe's communications with third parties that are not privileged, plaintiff and Attorney Beebe have failed to demonstrate that the requested documents and information are privileged, and even if such information is privileged, plaintiff waived the privilege at her deposition and/or pursuant to the crime-fraud exception.

*a. Relevance*

Plaintiff does not specifically argue the issue of relevance, but asserts that defendant seeks to depose Attorney Beebe "for the purpose of delving into a myriad of attorney/client communications, without any showing of relevance[…]" [Doc. #41-2, at 1].  Defendant argues that the

---

[3] Attorney Beebe adopts as the basis for his motion the arguments presented in plaintiff's motion for protective order. [Doc. #42].

information sought is relevant by virtue of the claims asserted in the State Farm Letter, specifically that plaintiff's injuries affected the quantity and quality of her work with Prudential and, as a result, her employment was terminated, and that plaintiff's injuries in the car accident caused plaintiff to suffer lost wages following the termination of her employment. [Doc. #45, at 8].  The Court agrees.  The information and documents sought are relevant where they bear on plaintiff's damages and the causation of her termination, two issues central to this case. See Arroyo v. Dep't of Pub. Safety, Civ. No. 3:11CV268(WWE), 2012 WL 3113139, at *1 (D. Conn. July 31, 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)) ("Relevance" under Rule 26(b)(1) "has been broadly defined to include 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any issue that is or may be in the case.'").  Therefore, the Court rejects plaintiff's relevance argument.

### b. Attorney-Client Privilege

Plaintiff generally argues that the Beebe subpoena improperly seeks testimony, and the disclosure of information and documents, that are protected by the attorney-client privilege.  Plaintiff further submits that no waiver of the attorney-client privilege occurred.  Defendant responds that the information sought is not privileged, and to the extent that any information is privileged, plaintiff waived this privilege at her deposition or by virtue of the crime-fraud exception. Defendant also argues that plaintiff and Attorney Beebe have not

met their burden establishing the attorney-client privilege.
The Court will address each of these arguments in turn.

    i.   Burden

Defendants argue that plaintiff and Attorney Beebe have not
met their burden of establishing the attorney-client privilege.
As is well established, "Mere conclusory assertions of privilege
or work-product protection are insufficient to satisfy this
burden." Scanlon v. Bricklayers and Allied Craftworkers, Local
No. 3, 242 F.R.D. 238, 245 (W.D.N.Y. 2007)(citation omitted);
see also P. & B. Marina, Ltd. P'ship v. Logrande, 136 F.R.D. 50,
54 (E.D.N.Y. 1991) ("A general allegation or blanket assertion
that the [attorney-client] privilege should apply is
insufficient to warrant protection."). Although plaintiff and
Attorney Beebe assert blanket claims of privilege, in light of
the current record, the Court credits plaintiff's statements
that Attorney Beebe represents her in the personal injury
matter. Accordingly, it is reasonable to assume that privileged
communications exist between plaintiff and Attorney Beebe.
However, there is insufficient information before the Court to
determine the applicability of the attorney-client privilege.
For example, "[a] document is not privileged merely because it
was sent or received between an attorney and the client. The
document must contain confidential communication relating to
legal advice." Buxbaum v. St. Vincent's Health Svcs., No.
3:12CV117 (WWE), 2013 WL 74733, at *5 (D. Conn. Jan. 7, 2013)
(citation omitted); see also P&B Marina, 136 F.R.D. at 53 ("The
mere existence […] of an attorney-client relationship does not

raise a presumption of confidentiality."). Accordingly, the requests that seek all communications between Attorney Beebe and plaintiff regarding her claims and/or damages in this matter are not automatically cloaked in the protection of the attorney-client privilege. For this reason, Attorney Beebe shall produce documents responsive to requests 1 and 2 of the subpoena that are not otherwise protected by the attorney-client privilege[4] and/or work product doctrine. For any documents withheld on this basis, Attorney Beebe shall simultaneously produce a privilege log compliant with Federal Rule of Civil Procedure 26(b)(5) and District of Connecticut Local Civil Rule 26(e).

The Court agrees with defendant that communications between Attorney Beebe and third parties are not generally protected by the attorney-client privilege. See, e.g., United States v. United Tech. Corp., 979 F. Supp. 108, 111 (D. Conn. 1997) ("Once a privileged communication has been disclosed purposefully to a third party, the attorney-client privilege is waived, unless the disclosed material falls under the common interest rule."). Accordingly, Attorney Beebe shall produce documents responsive to request number 3 of the subpoena.[5] To the extent that privilege or work-product protection is claimed with respect to these documents, Attorney Beebe shall also produce a privilege log.

---

[4] As articulated further below, the Court does not find a waiver of the attorney-client privilege by virtue of plaintiff's deposition testimony.

[5] To the extent that all documents responsive to this request have already been produced [See Doc. #47, at 1 n.1], plaintiff's counsel and/or Attorney Beebe may provide defendant with a sworn declaration attesting to such.

ii.  Waiver

Defendant claims plaintiff waived the attorney-client privilege when she disclosed the substance of her communications with Attorney Beebe concerning the State Farm Letter. [Doc. #45, at 11]. Defendant relies on the following excerpts from plaintiff's testimony to support a finding of waiver:

Q: Okay. Did you know Mr. Beebe was going to send this letter to State Farm before he sent it?

A: […] What I understood from my meeting with him, was he was going to try to work with State Farm to see if they can get repayment of what I was due.  If that didn't occur, then it was going to go into lawsuit.

Q:  […] [W]ere you aware that Mr. Beebe was seeking to recover from State Farm lost wages amounting to $34,000 for the period May 19, 2010 through August 19, 2011?

A: Yes, only wages up until the date of termination.

Q: Were you also aware that […] he was asking State Farm to pay $34,123.25 in lost wages from the date of your termination, August 19, 2011, through May 4, 2012?

A: No. […] [O]nce I found out about that, I had a conversation with him and explained I have an employment law case as well. And the only thing that State Farm was liable and had said they were going to pay was the unpaid – the lost wages up until the day of my termination.

Q: Did you ask Mr. Beebe to send a letter to State Farm telling them that he had made a mistake?

A:  He had answered me in that he said, I will only go up until the date of termination.  I don't know any correspondence that may have occurred afterwards or conversation to correct that.

[…]

Q: On page 4 [of the State Farm Letter] Mr. Beebe writes: The injuries caused by the collision with your insured caused pain and dysfunction that affected the quantity and quality of her work at Prudential.

[…]

Q: Did you tell Mr. Beebe that?

A: Again, he was aware of my physical problems and that I could no longer work the amount of hours I was working for quantity-wise.  Quality was a question whether it was scored accurately or

10

portrayed accurately.  But the accident obviously was the precipitous of all this.

[…]

Q: Then [Attorney Beebe] goes on to say: As such, Lisa makes a claim for both past and future lost wages as she has been unable to secure employment after being discharged by Prudential.  Do you see that?

A: Yes. And again, I didn't realize that when this occurred.  I did have a subsequent conversation with him; and he assured me that they would not be going after anything that was post-termination.

[Mendillo Depo. Tr., July 12, 2013, 254:24-25; 255:1-25; 256:1-3; 258:10-13; 259:5-11, 16-24].  Plaintiff argues that the deposition testimony does not divulge the substance of privileged communications, and therefore did not waive plaintiff's attorney-client privilege with Attorney Beebe. Accordingly, the question is whether the testimony disclosed substantive attorney-client communications so as to waive the privilege.

"When a party voluntarily discloses a confidential communication with his lawyer, he waives whatever privilege may have attached previously to that communication." United States v. Jackson, 969 F. Supp. 881, 883 (S.D.N.Y. 1997) (compiling cases); see also In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 468 (S.D.N.Y. 1996) ("The attorney client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.") (citation and internal quotations omitted; emphasis added).  It is well-settled that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or

defense and then shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).  Thus, "the client's offer of his own or the attorney's testimony as to a specific communication to the attorney is ... a waiver as to all other communications to the attorney on the same matter." Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (citation and internal quotations omitted; emphasis added); see also Long Term Capital Holdings, Inc. v. United States, No. 3:01 CV 1290(JBA), 2003 WL 1548770, at *8 (D. Conn. Feb. 14, 2008) (noting that the "Second Circuit routinely protects communications that refer generally to the fact that a party consulted with counsel[…]").

In this instance, the Court agrees with plaintiff that no waiver of the attorney-client privilege occurred.  A careful review of the applicable deposition testimony fails to reveal disclosure of specific and/or the significant substance of privileged communications.   In fact, it is apparent that plaintiff only testified in general terms about her conversations with Attorney Beebe.  For example, plaintiff testified about her "understanding" following a meeting with Attorney Beebe [Mendillo Depo. Tr., July 12, 2013, 254:24-25, 255:1-5]; that she had conversations with Attorney Beebe [id. at 255:13-22, 259:16-24]; and that Attorney Beebe was aware of her physical problems [id. at 259:5-8].  Plaintiff did not, however, testify as to any specific legal advice Attorney Beebe provided her with respect to her personal injury claim, or his legal

conclusions and the facts on which those conclusions were based. Moreover, the conversations testified to by plaintiff may not have initially meant to be kept confidential, to the extent such conversations dealt with the damages that would be demanded from State Farm in the personal injury action. [See, e.g., id. at 255:23-24, 256:1 (Q: Did you ask Mr. Beebe to send a letter to State Farm telling them that he had made a mistake? A: He had answered me in that he said, I will only go up until the date of termination.)].   Accordingly, plaintiff's testimony at her deposition in this matter did not effectuate a waiver of her attorney-client privilege with Attorney Beebe.  See, e.g., Libbey Glass, Inc. v. Onieda, Ltd., 197 F.R.D. 342, 347 (N.D. Ohio 1999) (testimony by defendant's executive about company's lawyers giving the "green-light" to a transaction and about the "legal ramifications of copying" competitor's glassware did not effect a waiver of the attorney-client privilege where "Courts have perceived a difference between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice.").  As such, the Court will not require Attorney Beebe to produce documents, or provide testimony, concerning his privileged communications with plaintiff about her claimed damages in the State Farm Letter. However, to the extent that Attorney Beebe had any such communications with plaintiff that were intended to be passed onto third parties, defendant has a right to inquire into such communications.  See In Re Bulow, 828 F.2d 94, 102 (2d Cir. 1987) (noting a Second Circuit decision that held a conversation

13

"was not privileged because it was not intended to be confidential, but was meant to be passed on to third parties.").

    iii. Crime-Fraud Exception

    Defendant also claims that plaintiff's "apparent efforts to secure double recovery for the same alleged lost wages" waives the attorney-client privilege with Attorney Beebe based on the crime-fraud exception.[6] "It is well-established that communications that otherwise would be protected by the attorney-client privilege… are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." Sony Electronics, Inc v. Soundview Tech., Inc., 217 F.R.D. 104, 112-13 (D. Conn. 2002) (citation omitted).  "In order for the crime-fraud exception to apply, the party seeking to overcome the privilege has the burden of showing probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof." Cendant Corp. v. Shelton, 246 F.R.D. 401, 205 (D. Conn. 2007) (citation and internal quotation omitted). "Probable cause exists when a 'prudent person' would have 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" Id. (citation omitted).  The Court finds that defendant failed to meet its burden establishing the crime-fraud exception. There is insufficient

---

[6] Defendant further notes that, "Of the alleged $85,000 in economic damages Plaintiff is claiming in the PI Action, the vast majority, $68,165.15 related to her claim for 'lost wages.' If, as plaintiff asserts in her deposition in this case, the car accident did not impact her job performance at Prudential or cause her termination, then she has made a fraudulent insurance claim in the PI Action, and such fraud is not protected by the attorney-client privilege." [Doc. #45, at 13 n. 11].

basis in the current record for a prudent person to suspect the perpetration or attempted perpetration of fraud. Moreover, even if defendant had made the requisite showing, defendant also failed to demonstrate that the communications it seeks were in furtherance of the purported fraud. In that vein, defendant failed to submit any evidence demonstrating probable cause to believe that the assistance of Attorney Beebe was sought by plaintiff in furtherance of alleged insurance fraud. Accordingly, on the current record, the crime-fraud exception is not applicable. See In re Grand Jury Subpoenas Duces Tecum (Corporate Grand Jury Witness), 798 F.2d 32, 34 (2d Cir. 1986) ("The crime/fraud exception to the attorney-client privilege cannot be successfully invoked merely upon a showing that the client communicated with counsel while the client was engaged in criminal activity.").

Finally, as to Attorney Beebe's deposition, the Court finds that there are areas of potential testimony probative of issues in this case and not privileged, for example, Mr. Beebe's communications with third parties concerning the damages demanded in plaintiff's personal injury case relating to plaintiff's lost wages. Nevertheless, the Court urges the parties to ensure that protections are in place to prevent the disclosure of privileged information. The Court suggests the parties coordinate the deposition of Attorney Beebe to occur on a date when the Court is available to address objections, and/or to conduct the deposition at the courthouse. As always, the parties may contact the Court for a telephone conference should

any further disputes arise.

**4.   Conclusion**

Accordingly, the motion for protective order and motion to quash are GRANTED IN PART AND DENIED IN PART, as set forth above.  Attorney Beebe shall produce documents responsive to the subpoena <u>duces</u> <u>tecum</u>, and corresponding privilege log, within thirty (30) days from the date of this ruling.  The parties shall endeavor to agree on a date for Attorney Beebe's deposition.  To the extent that the parties are unable to agree, they shall contact the Court for a telephone conference.

This is not a Recommended Ruling.  This is a discovery ruling or order reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(A); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 20th day of February 2013.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE